[Civ. No. 46248. First Dist., Div. Three. Aug. 24, 1979.]

THOMAS EARLE GEHMAN, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
FRANK N. KIRBY et al., Real Parties in Interest.

**COUNSEL**

Simon J. Katzen for Petitioner.

No appearance for Respondent.

Richard G. Rypinski, John P. Horgan, Robert J. DeFea, Kenneth G. Nellis and Thomas Lacchia for Real Parties in Interest.

## OPINION

**FEINBERG, J.**—Petitioner seeks writ of mandate and/or prohibition to require respondent court to vacate its judgment on the pleadings in favor of the State of California. Petitioner, a defendant in a personal injury action, filed a cross-complaint against the state, a party not named in the original complaint, seeking partial indemnity for the plaintiff's injuries. The trial court granted the state's motion on the premise that, because of the claims statutes, petitioner could not file the cross-complaint for partial indemnity until there had been a final judgment against defendant in the main action. Under *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], a defendant may file a cross-complaint for partial indemnity prior to the rendition of a final judgment. The claims statutes affect this rule only insofar as they require the defendant to file a claim with the public entity as a condition precedent to the maintenance of the cross action. We have concluded that petitioner has complied with the requirements of the claims statutes and that the motion for judgment on the pleadings was improperly granted. We issue the peremptory writ.

### The Facts

Frank Kirby sustained personal injuries in a collision between his motorcycle and petitioner's automobile. The accident occurred as petitioner was entering State Route 92 in San Mateo from the private property of defendant Clinton Bongard. On April 4, 1977, Kirby filed a complaint for personal injuries against petitioner and Bongard without naming the state as a defendant. On May 9, 1977, petitioner filed a claim with the state seeking costs and indemnity in the Kirby suit, alleging that the accident was caused by the dangerous and defective conditions of State Route 92. Petitioner's claim was denied by the state, and he filed the cross-complaint against the state on March 15, 1978, seeking contribution and indemnity.

On February 2, 1979, the state filed a motion for judgment on the pleadings on petitioner's cross-complaint. The trial court granted the state's motion and denied as moot petitioner's motion to reconsider a previously granted discovery order obtained by the state on February 14, 1979.

Petitioner then filed this petition challenging the two orders. We issued the alternative writ and stayed further proceedings in the respondent court pending determination of this petition.

## THE JUDGMENT ON THE PLEADINGS

The trial court granted the state's motion for judgment on the pleadings on the ground that the cross-complaint was then premature as there had not yet been a finding of liability on the part of the petitioner. The able trial judge, in his decision, relied upon a Court of Appeal decision. Subsequently, the Supreme Court granted a hearing in that case. Perforce, we must decide afresh the law to be applied to this case. Our task is to define the relationship between the claims statutes in California (Gov. Code, § 900 et seq.), which require timely filing of a claim with a public entity as a condition precedent to the maintenance of a tort action against the public entity, and the doctrine of partial indemnity between joint tortfeasors.

A. *The Claims Statutes Are Applicable to Actions for Partial Indemnity Against a Public Entity*

 Presentation of a claim, where required by law, is a prerequisite to the maintenance of a cause of action against a public entity. (Gov. Code, § 945.6; *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) A claim for money or damages against the state must be presented to the state prior to the initiation of a suit against it. (Gov. Code, § 905; *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 120 [113 Cal.Rptr. 102, 520 P.2d 726].) We are of the view that a demand for partial indemnity is a claim for money or damages, and therefore a party seeking such relief against the state must comply with the claims procedure.

We recognize that other jurisdictions have taken the position that their claims statutes are inapplicable to third-party complaints for contribution and indemnity against public entities. (See, e.g., *Olsen* v. *Jones* (Iowa

1973) 209 N.W.2d 64; *Markey* v. *Skog* (1974) 129 N.J. Super. 192 [322 A.2d 513]; *Royal Car Wash Co.* v. *Mayor and Council of W.* (Del. Super. Ct. 1968) 240 A.2d 144; *Geiger* v. *Calumet County* (1962) 18 Wis. 2d 151 [118 N.W.2d 197].) However, we do not find these cases persuasive as to California law.

■ Government Code section 905.2 provides: "There *shall* be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part *all claims for money or damages against the State:*" (Italics added.) The wording of this statute is so comprehensive that it leaves little room for interpretation. We also note that the Legislature has enacted specific statutory exceptions to the claim presentation requirement, none of which are applicable here, which supports the conclusion that the Legislature intended *all* claims against the state to be governed by this procedure unless specifically exempted. (See, e.g., Gov. Code, §§ 905.6, 925.2, 930.) Moreover, as the Legislature has the authority to implement article III, section 5 of the California Constitution, which allows the state to be sued (*Smith* v. *City and County of San Francisco* (1977) 68 Cal.App.3d 227, 230 [137 Cal.Rptr. 146]), it is for the Legislature to decide what actions are exempt from the claims statutes.

■ The stated purpose of the claim requirement is consistent with our interpretation that the statutes govern actions for partial indemnity against a public entity. The two purposes of the claims procedure are succinctly stated by the California Law Revision Commission: " 'First, they give the governmental entity an opportunity to settle just claims before suit is brought. Second, they permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim.' " (Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 8.5, p. 361.)

These purposes are furthered by the requirement that a party seeking partial indemnity from a public entity must comply with the claim procedure, particularly when, as we shall conclude below, the claim must be filed within 100 days after the defendant has been served with the complaint. First, the public entity would have the opportunity to effect a settlement of the claim prior to litigation. In *American Motorcycle Assn., supra,* the court specifically stated that the settlement procedures of the contribution statutes (Code Civ. Proc., § 877) are to be "preserved as an integral part of the partial indemnity doctrine." (20 Cal.3d at pp. 603-

604.) The fact that settlement might come easier after judgment in the plaintiff's action does not detract from the advantage of giving the public entity an even earlier opportunity to settle. Secondly, early notice of the partial indemnity claim would also alert the public entity to conduct an investigation of the facts underlying both the defendant's and the plaintiff's claims, thus allowing the entity to more adequately defend itself against unjust claims and to also correct the condition which gave rise to the plaintiff's injuries.

In sum, we can find no reason in logic or in the statute to exempt an action for partial indemnity against a public entity from the claims procedure.

### B. *A Cause of Action for Partial Indemnity Accrues Upon the Service of the Plaintiff's Complaint*

Our conclusion that an action for partial indemnity against a public entity is governed by the claims procedure leads us to the next issue: When must the claim be filed with the public entity? Government Code section 911.2 provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than the 100th day after the *accrual of the cause of action.*" (Italics added.)

A cause of action "accrues," within the meaning of this section, on the "date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon." (Gov. Code, § 901.) But there is no legislative declaration of when a cause of action for *partial indemnity* accrues nor can we find any judicial authority squarely on point.

We see three plausible solutions to our inquiry: (1) the cause of action accrues upon the rendition of judgment in favor of the plaintiff in the main action; (2) the cause of action accrues at the time of the injury to the plaintiff; or (3) the cause of action accrues upon the service of the original complaint upon the defendant.

(1) Real party in interest, the State of California, contends that the cause of action accrues upon the rendition of judgment in favor of the plaintiff. The state argues that as an action for true indemnity does not

accrue until there has been a finding of liability on the part of the indemnitee (*Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834, 843 [36 Cal.Rptr. 741, 389 P.2d 133]), an action for partial indemnity is similarly contingent upon a judgment of liability.

■ While it is true that an action for true indemnity does not accrue until there has been a judgment of liability, we disagree that an action for *partial indemnity* is so constrained. The fallacy in the state's argument is that it fails to take notice of the legal distinctions between the two actions as elaborated in *American Motorcycle Assn., supra.* In that case, the court, following its adoption of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], modified the traditional equitable indemnity doctrine to permit a right of partial indemnity under which liability among multiple tortfeasors may be apportioned on a comparative fault basis. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at p. 583.) There, the trial court had denied the petitioner leave to file a cross-complaint against a third party, not named in the original complaint, in which the petitioner asserted that his liability for the plaintiff's damages should be reduced by the percentage of damages allocable to the negligence of the cross-defendants. The court in *American Motorcycle Assn.* concluded that the creation of comparative negligence mandated the modification of the traditional equitable indemnity doctrine to allow the defendant to file a cross-complaint against a concurrent tortfeasor for partial indemnity, "even when such concurrent tortfeasor has not been named a defendant in the original complaint." (At p. 607.) The court, in reaching this conclusion, relied upon Code of Civil Procedure section 428.10, which permits a defendant to file a cross-complaint against a person which sets forth a cause of action arising out of the same transaction or occurrence which gave rise to the plaintiff's claim, whether or not such a person is a party to the plaintiff's action. Under Code of Civil Procedure section 428.50, a defendant must obtain leave of the court to file such a cross-complaint *unless* the cross-complaint is filed prior to, or at the same time, as the answer to the complaint. ■ Thus, it is clear that the court in *American Motorcycle Assn.* intended that the defendant would be allowed to file a cross-complaint for partial indemnity prior to the rendition of a final judgment in the underlying action.

■ (2) We reject also the proposition that a cause of action for partial indemnity should accrue upon the injury to the plaintiff. If this were the law, the defendant would be in a most precarious situation. He would have to file the claim against the state within 100 days of the injury to the

plaintiff, but, on the other hand, the plaintiff would not be required to file the complaint against the defendant for one year (Code Civ. Proc., § 340, subd. 3), and could fail to serve the defendant with process for three more years (Code Civ. Proc., § 581a, subd. (a)). The defendant's cause of action for partial indemnity against the state would be subject to extinction prior to his knowledge of the plaintiff's claim against him. The end result would be to place in the hands of the plaintiff the power to determine whether the defendant could seek indemnity from the state for the plaintiff would have the ability to manipulate the filing of the complaint so that the claim period would expire. Such a result is contrary to notions of equity, fairness and justice.

 (3) We remain with the third alternative—the cause of action accrues upon the service of the complaint on the defendant. In our view, this is the fair and logical course to follow.

As we have noted, a cause of action accrues, within the meaning of Government Code section 911.2, on the date that it would be deemed to have accrued within the statute of limitations if there were no requirement that the claim be filed with the state. Under the general rule, a cause of action accrues, and therefore the statute of limitations begins to run "when a suit may be maintained thereon." (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]; *Osborn* v. *Hopkins* (1911) 160 Cal. 501, 506 [117 P. 519].) As previously noted, under *American Motorcycle Assn.,* a cross-complaint for partial indemnity may be filed prior to, or at the same time as the answer. This ruling is, in effect, the equivalent to saying that at any time after service of the complaint, the cross-complaint may be filed. Thus, as a suit for partial indemnity may be maintained upon the service of the plaintiff's complaint, the cause of action for partial indemnity accrues at that time.

Under our solution, the defendant would have 100 days from the receipt of the plaintiff's complaint to file his claim for partial indemnity against the state. This solution avoids the problem of extinction of the claim inherent under the second alternative and, at the same time, avoids the hardship to the defendant of requiring him to wait until a final judgment to pursue his claim against the state under the first alternative. Moreover, our solution avoids multiple suits arising out of the same transaction or occurrence and thus furthers the goal of judicial economy.

The policy and purpose of the claims requirement is also promoted by our conclusion. The state would be put on notice of the defendant's claim within 100 days of the service of the plaintiff's complaint upon the defendant. The state would be able to conduct an early investigation of the facts giving rise to the claims of both the defendant and the plaintiff, and to either effect an early settlement of the claim or prepare for litigation while the evidence is still fresh. Public policy is furthered by the early notice in that the condition or practice which gave rise to the plaintiff's injuries can be corrected promptly if needed.

We can see no harm that will result to the state from our conclusion. In effect, the state will be put in the same position as it would have been had the plaintiff named the state as a joint defendant in the complaint. The state argues that we would be promoting public policy if we ruled that the claim could not be presented until the rendition of a final judgment in that (1) the issue may become moot if the defendant is not found liable for the plaintiff's injuries, (2) the recovery of the plaintiff may be too small to warrant the pursuit of a partial indemnity action against the state, or (3) the facts of the case may subsequently show insufficient state participation to justify a partial indemnity action. While these are clearly possibilities, it is also true that any of these possibilities could occur in *any* action for partial indemnity where the indemnitor is a nonpublic party. We see no reason to afford the state a more favorable position in a partial indemnity action than is presently given to a private party.

Nor are we persuaded by the state's argument that such a cross-complaint will unduly complicate the plaintiff's action. ■ As noted in *American Motorcycle Assn.,* the trial judge has the authority under Code of Civil Procedure section 1048 to postpone the trial of the indemnity issue if he feels that it will unduly complicate the plaintiff's suit, but the trial judge may not "preclude the filing of [the] cross-complaint altogether." (20 Cal.3d at p. 584.)

■ We therefore hold that a named defendant may file a cross-complaint for partial indemnity against the state, whether or not the state is a party to the action, so long as the defendant has complied with the claims requirement of Government Code section 911.2 by filing a claim with the state within 100 days of the service of the plaintiff's complaint.

In the instant case, the plaintiff filed his complaint for personal injuries against petitioner on April 4, 1977. Although the record does not show the date of the service of the complaint, petitioner has clearly complied with

the 100-day rule as he filed his claim with the state on May 9, 1977. Petitioner has complied with the claim requirement of Government Code section 911.2, and therefore he may properly proceed to cross-complain against the state for partial indemnity. Respondent superior court erred in granting the state's motion for judgment on the pleadings.

### Motion to Reconsider the Discovery Order

Petitioner also challenges respondent superior court's ruling on the state's motion to compel the production of documents. Petitioner contends that the state failed to show good cause to compel the production of privileged documents, and therefore the trial court abused its discretion in granting the discovery motion.

Subsequent to the granting of the discovery motion, petitioner filed a motion to reconsider. The trial court denied petitioner's motion on the ground that the issue was then moot in light of the granting of the motion for judgment on the pleadings.

As respondent superior court has not yet ruled on the merits of petitioner's motion to reconsider the discovery order, we do not address the merits of petitioner's contention. We are confident the trial court will now reexamine petitioner's motion to reconsider for, in light of our holding, petitioner's motion is no longer moot.

### Conclusion

Let a peremptory writ of mandate issue directing respondent superior court to set aside its order granting the state's motion for judgment on the pleadings and to allow petitioner to proceed upon the cross-complaint.

White, P. J., and Halvonik, J., concurred.