[L.A. No. 31101. Apr. 10, 1980.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ART FROST et al., Real Parties in Interest.

COUNSEL

Richard G. Rypinski, Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Robert W. Vidor, Joel L. Zwick and Ellen D. Tiger for Petitioner.

Elwyn L. Johnson, City Attorney (Modesto), and Michael F. Dean, Deputy City Attorney, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Yusim, Cassidy, Stein & Hanger, Andrew D. Stein, Jeffrey G. Keane, Shelden & Kulchin, Shelden, Kulchin & Klein, Sydney Kulchin and David E. Klein for Real Parties in Interest.

William A. Dorland and Marcus R. Williamson as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**TOBRINER, J.**—In *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], our court explained that when a plaintiff's injury is proximately caused by the negligent acts of a number of joint tortfeasors, although each tortfeasor is "jointly and severally" liable for the injury, the plaintiff enjoys no right to single out only one or a few of the tortfeasors to bear all of the loss. We pointed out in this regard that a named defendant who has been so selected for suit has a right to pursue his own equitable indemnity action against an additional unnamed tortfeasor to obtain indemnity for any liability that should properly be borne by such additional tortfeasor.

In the instant case, the plaintiff, injured in an automobile accident on a public highway, instituted the underlying action against a number of individuals but did not file a timely claim against the State of California (state) under the provisions of the California Tort Claims Act (Gov. Code, § 810 et seq.) and did not join the state as a defendant in the action. Several of the named defendants thereafter filed an equitable indemnity action against the state, pursuant to a cross-complaint, alleging that the state's negligence in blocking several lanes of the highway proximately caused plaintiff's injuries, and asserting that if they were held liable for such injury the state was obligated to indemnify them for at least a portion of the liability.

The state demurred to the defendants' cross-complaint, maintaining that the equitable indemnity action was barred by the tort claims act.

The state asserted that because the plaintiff had failed to file a timely claim within 100 days of the accident and thus could not himself pursue his action against the state, the defendants' equitable indemnity action against the state should likewise be precluded. The trial court overruled the state's demurrer, and the state then filed the instant writ proceeding to challenge the trial court's ruling.

In light of the controlling statutory provisions and the well-established principles relating to the accrual of defendants' equitable indemnity action, we affirm the trial court's decision. As we shall explain, the governing authorities, both in California and throughout the country, uniformly hold that a tort defendant's equitable indemnity action is separate and distinct from the plaintiff's tort action. The indemnity action, unlike the plaintiff's claim, does not accrue for statute of limitations purposes when the original accident occurs, but instead accrues at the time that the tort defendant pays a judgment or settlement as to which he is entitled to indemnity.

Moreover, the controlling precedents also teach that a tort defendant does not lose his right to seek equitable indemnity from another tortfeasor simply because the original plaintiff's action against the additional defendant may be barred by the statute of limitations. The defendant's equitable indemnity action is independent of the plaintiff's action and a defendant is entitled to pursue his own indemnity action so long as the statute of limitations on that action has not expired.

Finally, the authorities establish that the above principles apply fully to equitable indemnity actions against government entities. In particular, cases throughout the country hold that the time for filing a claim for equitable indemnity does not expire until after the defendant's equitable indemnity action accrues. Such an action faces no bar simply because the plaintiff cannot pursue an action against the governmental entity because of his own failure to file a timely claim.

Although the state suggests that this court's decision in *American Motorcycle* worked a fundamental alteration in these established principles, we shall explain that nothing in the *American Motorcycle* decision supports the state's assertion, and that recent cases from other jurisdictions which have adopted similar doctrines of comparative or partial equitable indemnity clearly refute the state's argument. Accordingly, we conclude that the requested writ should be denied.

## 1.  *The facts and proceedings below*

On December 16, 1973, while driving in his automobile, Jack Peters was injured in a three-car accident on the Ventura Freeway, a public highway owned and maintained by the State of California. On October 23, 1974, more than ten months after the accident, Peters filed the underlying personal injury action against Art Frost, Martin Josephson and Roy and Elaine Hunter, the owners and operators of the other two vehicles; Peters had not, however, filed a claim with the state within 100 days of the accident and did not join the state as a defendant in the action.[1]

In April 1978, prior to trial in the underlying action and shortly after this court's decision in *American Motorcycle*, defendants Frost and Josephson filed a cross-complaint for equitable indemnity against the state, alleging that the state had failed to block adequately two lanes of traffic on the Ventura Freeway or to provide appropriate warnings of the blocked area, and maintaining that the state's negligence had created a dangerous condition of public property which proximately caused plaintiff's injuries. In light of these facts, defendants asserted that in the event they were held liable for plaintiff's injuries, they were entitled to recover at least a portion of such damages from the state under the equitable indemnity principles enunciated in *American Motorcycle*. Shortly, thereafter, defendants Roy and Elaine Hunter filed a motion for leave to file a similar equitable indemnity cross-complaint against the state.

The state demurred to the Frost-Josephson cross-complaint, and filed an opposition to the Hunters' motion, contending that since the plaintiff's own personal injury action against the state was barred by the tort claims act, the defendants' equitable indemnity actions should similarly be barred. The trial court rejected the state's argument, and, by separate orders, overruled the demurrer to the Frost-Josephson cross-complaint and granted the Hunters' motion.

---

[1]Peters thereafter did seek leave to file a late claim with the state, but the application was denied by the State Board of Control and the superior court, and the denial was affirmed by the Court of Appeal.

In March 1976, Peters filed an amended complaint in this action, adding a cause of action for legal malpractice against his former attorney for failing to file a timely claim. That cause of action is not before us in the present proceeding.

The state then filed the instant petition for writ of prohibition and/or mandate, challenging the trial court's orders as arbitrary and in excess of the court's jurisdiction. After the Court of Appeal had initially denied the petition without opinion, we issued an alternative writ returnable before the Court of Appeal in light of the general importance of the issue presented. Thereafter, because of a divergence of views among the Courts of Appeal on this question, we granted a hearing in this case to resolve the issue.

2.  ▇ *Under Government Code sections 911.2 and 901, the time for filing a claim does not expire until at least 100 days after the claimant's cause of action accrues for statute of limitations purposes. Because defendants' equitable indemnity actions have not yet accrued for statute of limitations purposes, the cross-complaints are not barred by the statutory claims provision.*

Because the state contends primarily that defendants' equitable indemnity actions against it are barred by the expiration of the period for filing a claim under the tort claims act, we begin our analysis by examining the language of the controlling statutory provisions. Section 911.2 of the Government Code provides in relevant part that "[a] claim relating to a cause of action...for injury to person or personal property ...shall be presented...not later than the 100th day *after the accrual of the cause of action* [and a] claim relating to any other cause of action shall be presented...not later than one year *after the accrual of the cause of action.*" (Italics added.) Although there may be some question as to which category of section 911.2 a claim for equitable indemnity arising out of a governmental entity's tortious activity falls, that issue is not relevant in the instant case for the statute clearly provides that with respect to *both* categories, the time for filing a claim does not expire until at least 100 days after the date of the accrual of the claimant's cause of action.

Government Code section 901, in turn, specifies the relevant "date of accrual" for the purpose of the governmental claims provisions. Section 901 provides: "For the purpose of computing the time limits prescribed by Sections *911.2*, 911.4, 912, and 945.6, *the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning*

*of the statute of limitations* which would be applicable thereto if there were no requirement that a claim be presented to and acted upon by the public entity before an action could be commenced thereon." (Italics added.) Thus, the relevant question in this case turns on when the defendants' equitable indemnity actions would be deemed to accrue for purposes of the statute of limitations "if the action were between private litigants." (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 8.27, pp. 385-386.)

Past California cases provide a clear and unambiguous answer to this question. Just two years ago, in *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505], our court noted that "[i]t is well settled that a cause of action for implied indemnity does not accrue or come into existence *until the indemnitee* [i.e., the initial defendant] *has suffered actual loss through payment.* (*Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834, 843 [36 Cal.Rptr. 741, 389 P.2d 133]; *Card Constr. Co.* v. *Ledbetter* (1971) 16 Cal.App.3d 472, 480 [94 Cal.Rptr. 570].)" (Italics added.) Numerous additional California authorities, moreover, uniformly confirm "the rule that the period of limitations on the [equitable] indemnity claim begins when the claimant settles with the injured party." (*Aerojet General Corp.* v. *D. Zelinsky & Sons* (1967) 249 Cal.App.2d 604, 612-613 [57 Cal.Rptr. 701]; see, e.g., *Vegetable Oil Products Co.* v. *Superior Court* (1963) 213 Cal.App.2d 252, 257 [28 Cal.Rptr. 555]; *De La Forest* v. *Yandle* (1959) 171 Cal.App.2d 59, 62 [340 P.2d 52].) In the *Vegetable Oil* case, the Court of Appeal briefly explained the rationale of the settled rule: "If it were the law that the statute of limitations starts to run when the bodily injury occurs, the indemnitee's remedy would be most unsatisfactory. Until the amount of the damages was determined by a judgment or a compromise with the injured party, the indemnitor would have no way of either measuring or discharging his duty to his indemnitee. The only workable approach is that applied in the *De La Forest* case—that the period of limitations starts to run from payment." (213 Cal.App.2d at p. 257.)

Indeed, a recent annotation of cases throughout the country demonstrates that the rule as to the accrual of a cause of action for equitable indemnity established by the California cases prevails throughout the United States. As the annotation states: "[T]he generally recognized rule...is that a claim for indemnity based on tort does not accrue, and the statute of limitations does not start to run thereon, at the time of the commission of the tort, or the time the injury was inflicted....The

claim accrues at the time the indemnity claimant suffers loss or damage, that is, at the time of payment of the underlying claim, payment of a judgment thereon, or payment of a settlement thereof by the party seeking indemnity." (Annot., When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort (1974) 57 A.L.R.3d 867, 881-884 (fns. omitted).)

Furthermore, in recognizing that a tort defendant's claim for equitable indemnity is separate and distinct from the injured party's claim against the additional defendant for statute of limitations purposes, the cases explicitly hold that a tort defendant does not lose his own independent right to seek such recovery simply because the injured party is barred from pursuing its separate claim against the additional defendant by the applicable statute of limitations. (See, e.g., *Sunset-Sternau Food Co. v. Bonzi, supra,* 60 Cal.2d 834, 843; *Vegetable Oil Products Co. v. Superior Court, supra,* 213 Cal.App.2d 252, 257; *De La Forest v. Yandle, supra,* 171 Cal.App.2d 59, 62. See generally Annot., *supra,* 57 A.L.R.3d 867; Annot. (1949) 8 A.L.R.2d 8, 139 ("where the original defendant alleges facts showing that the additional defendant is liable over to him . . . the fact that the statute of limitations will bar the plaintiff from a direct recovery against the additional defendant has no effect on the defendant's right to enforce his claim of contribution or indemnity, since the cause of action owned by the plaintiff is distinct from the cause of action arising out of the duty of the additional defendant to indemnify the defendant").)

Thus, the cases establish that if the state were a private party (1) the defendants' equitable indemnity actions against the state would not be precluded simply because the plaintiff's action against the state was barred by the statute of limitations, and (2) the defendants' indemnity actions would not be deemed to accrue for statute of limitations purposes until such defendants had suffered an actual loss through payment of a settlement or judgment, an event that, in the instant case, has not yet occurred. Since, as we have seen, sections 911.2 and 901 explicitly provide that the time for filing a claim under the governmental claim provisions does not expire until at least 100 days after the claimant's cause of action accrues for statute of limitations purposes, it follows that defendants' equitable indemnity actions in this case are not barred despite the fact that the claim filing period has expired with respect to the plaintiff's separate action against the state.

A host of cases arising under governmental tort claims statutes throughout the country confirm this conclusion. In *Chicago, Rock Island & Pacific Ry. Co.* v. *United States* (7th Cir. 1955) 220 F.2d 939, for example, a defendant who had incurred liability to an accident victim instituted an action for indemnity against the United States more than four and one-half years after the underlying accident but within two years after settling the claim of the accident victim. The government, relying on a section of the Federal Tort Claims Act which provided that "[a] tort claim against the United States shall be forever barred unless such action is begun within two years after such claim accrues...." (28 U.S.C. § 2401(b)), argued that the implied indemnity action was barred because it was begun more than two years after the accident, at a time when the injured victim could no longer sue the United States. The government maintained, as the state does in the instant case, that Congress had intentionally fixed a short limitations period so that the government might be afforded an opportunity to investigate promptly the claims against it, and thus that the period of limitation of the claims act should run from the date of the accident.

The court in the *Chicago, Rock Island* case, however, rejected the government's argument, explaining: "Congress fixed the date when the limitation period commences to run as the time 'such claim accrues.' It is plain, of course, that no claim accrued to the [indemnitee] against the government prior to the date when the former made payment to [the injured party.] The government's contention on this point, if sustained, would mean that a suit under the Tort Claims Act could be barred before it came into existence. Such an application of the limitation provisions would produce an incongruity which we think should not be made." (220 F.2d at p. 942.)

The decision in *Thomas* v. *Przbylski* (1973) 83 Wn.2d 118 [516 P.2d 207] is similarly directly in point. In *Thomas*, as in the instant case, a plaintiff injured in an accident brought suit against a nongovernmental defendant more than 120 days (the relevant time period of the Washington claim statute) after the accident and did not join any governmental defendant. The named defendant then filed a third party claim against a municipality, alleging that it was entitled to indemnification or contribution from the city because of the city's failure to provide adequate lighting or safe crosswalks. The municipality argued that the defendant's implied indemnity action was barred because no claim had been filed with the city within 120 days *of the accident*, but the Washington Supreme Court rejected the city's position and held

that, with respect to the defendant's indemnity action, the claim statutes did not begin to run until the indemnity action accrued, i.e., "until the defendant has made payment to plaintiff or had a judgment rendered against him." (516 P.2d at p. 208.)

Indeed, a review of the cases from other jurisdictions reveals that courts throughout the country have concluded with virtual unanimity that a tort defendant's indemnity action against a governmental entity is separate and distinct from the injured plaintiff's action against the governmental entity and is not barred by a failure to file a timely claim measured from the time of the accident. (See, e.g., *Valstrey Serv. Corp. v. Board of Elections* (1957) 2 N.Y.2d 413 [161 N.Y.S.2d 52, 54, 141 N.E.2d 565, 566]; *Hennington v. Valuch* (1963) 19 Wis.2d 260 [120 N.W.2d 44, 45-46]; *Royal Car Wash Co. v. Mayor & Council of W.* (Del.Super.Ct. 1968) 240 A.2d 144, 145-146; *Roehrig v. City of Louisville* (Ky. 1970) 454 S.W.2d 703, 704-705; *Cotham v. Board of County Commissioners* (1971) 260 Md. 556 [273 A.2d 115, 120-121]; *Olsen v. Jones* (Iowa 1973) 209 N.W.2d 64, 65-68; *Brady v. City & County of Denver* (1973) 181 Colo. 218 [508 P.2d 1254, 1256]; *Keleket X-Ray Corp. v. United States* (D.C.Cir. 1960) 275 F.2d 167, 168-169; *Corning Glass Works v. Puerto Rico Water Resources Auth.* (1st Cir. 1968) 396 F.2d 421, 423-424; *United States Lines, Inc. v. United States* (5th Cir. 1972) 470 F.2d 487, 489; *Globig v. Greene & Gust Co.* (E.D.Wis. 1960) 184 F.Supp. 530, 532-533; *Albert v. Dietz* (D. Hawaii 1968) 283 F.Supp. 854, 856-857; *Waldinger Co. v. P & Z Co., Inc.* (D.Neb. 1976) 414 F.Supp. 59, 60-61.)[2]

Although it did not involve an equitable indemnity action, the case of *Allstate Ins. Co. v. County of Alameda* (1973) 33 Cal.App.3d 418 [109 Cal.Rptr. 53] demonstrates the applicability of the reasoning of the out-of-state authorities to the California Tort Claims Act. In *Allstate,*

[2]Although the Minnesota Supreme Court appears to have reached a contrary conclusion with respect to an action for contribution in *Jensen v. Downtown Auto Park, Inc.* (1971) 289 Minn. 436 [184 N.W.2d 777], that two-page decision did not discuss the tort defendant's contribution action at all and did not mention or analyze any of the numerous out-of-state authorities on the issue, but rather focused only on whether the notice of claim that had been filed by the plaintiff in that case was adequate under prior Minnesota decisions.

In New Jersey, the intermediate appellate courts are apparently split on the issue (compare *Markey v. Skog* (1974) 129 N.J.Super. 192 [322 A.2d 513, 516-520] with *Cancel v. Watson* (1974) 131 N.J.Super. 320 [329 A.2d 596], but the *Cancel* decision, which concluded that such an indemnity claim could not be maintained under these circumstances, relied on a number of specific distinctions drawn by New Jersey's tort claims act that are not present in California law. (See 329 A.2d at pp. 597-598.)

an insurer which had paid for an accident victim's injuries pursuant to an uninsured motorist provision of its policy and had thereby succeeded to the accident victim's rights, brought a subrogation action against the county alleging that the county was liable for the victim's injuries. The county resisted the action, maintaining, as does the state in the instant case, that the insurer's action was barred under the tort claim act because a claim had not been filed with the county within 100 days of the accident.

The *Allstate* court rejected the county's contention and held that the insurer's action was not barred by the claims statute. In reaching this conclusion, the court pointed out that under an applicable statutory provision the statute of limitations on the insurer's subrogation action did not begin to run from the date of the injured person's accident, but rather ran from the date that the insurer made payment to the victim. (See Ins. Code, § 11580.2, subd. (g);[3] *Interinsurance Exchange* v. *Harmon* (1968) 266 Cal.App.2d 758, 761-763 [72 Cal.Rptr. 352].) In light of Government Code sections 911.2 and 901, the tort claim provisions discussed above, the *Allstate* court concluded that the insurer's time for filing a claim did not expire until after the insurer's cause of action had accrued. Since, as we have seen, the California authorities clearly establish that a tort defendant's action for equitable indemnity, like the insurer's statutory cause of action at issue in *Allstate*, does not accrue for statute of limitations purposes until the time of payment, the *Allstate* decision directly refutes the state's contention that the defendants' indemnity actions in the present case are barred because no claim was filed within 100 days of the accident.

3. *This court's recent decision in American Motorcycle v. Superior Court (1978) 20 Cal.3d 578 did not alter the well-established rule as to the accrual of a cause of action for equitable indemnity.*

The state acknowledges that numerous cases hold that an action for equitable indemnity is separate and distinct from the underlying tort action and that "a cause of action for implied indemnity does not

---

[3]Section 11580.2, subdivision (g) provides: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made. *Such action may be brought within three years from the date that payment was made hereunder.*"

accrue...until the indemnitee has suffered actual loss through payment." (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 21 Cal.3d 497, 506.) The state nevertheless seeks to avoid the obvious relevance of these principles to the claim-filing period presented by sections 911.2 and 901 by suggesting that the established rule does not apply to an equitable indemnity action for "partial" or "comparative" equitable indemnity maintained pursuant to this court's recent decision in *American Motorcycle.* The state argues, in this regard, (1) that the decision in *American Motorcycle* established an entirely new cause of action that is theoretically distinct from the traditional, all-or-nothing equitable indemnity action and (2) that *American Motorcycle* indicates that the accrual date of its "new" indemnity action differs from the accrual date of a pre-*American Motorcycle* equitable indemnity action. As we explain, the state is in error on both points.

To begin with, the *American Motorcycle* decision clearly reveals that this court did not purport to create a wholly new equitable indemnity action resting on a different theoretical basis than the pre-*American Motorcycle* equitable indemnity doctrine. Instead, we simply recognized in *American Motorcycle* that "[a]lthough California cases have steadfastly maintained that the [equitable indemnity] doctrine is founded on 'equitable considerations'..., the all-or-nothing aspect of the doctrine has precluded courts from reaching a just solution in the great majority of cases in which equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor." (20 Cal.3d at p. 595.)

Noting that a recent decision of the New York Court of Appeals, *Dole* v. *Dow Chemical Company* (1972) 30 N.Y.2d 143 [331 N.Y.S.2d 382, 282 N.E.2d 288] had demonstrated that "the common law was capable of *evolving* the equitable indemnity doctrine into a rule which would permit the equitable sharing of loss between multiple tortfeasors" (italics added and omitted) (*id.,* at p. 597), we concluded that in order to bring the California equitable indemnity doctrine into line with its historical and theoretical foundations "the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*Id.,* at p. 598.) Thus, *American Motorcycle* did not establish a new cause of action separate and distinct from the traditional equitable indemnity action, but simply modified the all-or-nothing aspect of the

pre-*American Motorcycle* doctrine to permit partial indemnification in appropriate cases.[4]

Moreover, absolutely nothing in the language or reasoning of the *American Motorcycle* decision supports the state's further contention that *American Motorcycle* indicates that a cause of action seeking partial indemnity accrues *prior to* the indemnitee's actual loss through payment of a judgment debt. Although the question of the accrual date of the defendant's equitable indemnity claim was not directly presented in *American Motorcycle*, we note that if the decision had intended to alter the traditional accrual date of an equitable indemnity action our opinion would have at least adverted to such a change. Nothing in the opinion indicates any such modification.

Furthermore, the fact that *American Motorcycle* permits an apportionment or sharing of liability among joint tortfeasors, rather than a total shifting of liability from one to another, does not rationally support a conclusion that the decision altered the date of accrual of the equitable indemnity cause of action. In actions for contribution, which have always involved a *sharing* of liability, courts have uniformly followed the same rule as to the accrual of the cause of action as has been followed with respect to equitable indemnification. Thus, the authorities hold that a tort defendant's action for contribution accrues for statute of limitations purposes when he has paid out more than his share of the damages, and not when the plaintiff's tort injury occurs. (See Code Civ. Proc., § 875, subd. (c); *Augustus v. Bean* (1961) 56 Cal.2d 270, 271-272 [14 Cal.Rptr. 641, 363 P.2d 873]. See generally Annot., *supra*, 57 A.L.R.3d 867, 875-881.)

---

[4]Contrary to the dissent's suggestions (*post*, pp. 764-765, 768-769), pre-*American Motorcycle* decisions did not apply the equitable indemnity doctrine only in cases in which one tortfeasor maintained a "voluntary" or "special" relationship with another tortfeasor; rather the authorities sanctioned or denied indemnity under circumstances that defied any easy, or, indeed, fully comprehensible, categorization. As one pre-*American Motorcycle* decision described the then-existing state of the law: "The cases are not always helpful in determining whether equitable indemnity lies. The test[s] utilized in applying the doctrine are vague. Some authorities characterize the negligence of the indemnitor as 'active,' 'primary,' or 'positive' and the negligence of the indemnitee as 'passive,' 'secondary,' or 'negative.' [Citations.] Other authorities indicate that the application of the doctrine depends on whether the claimant's liability is 'primary,' 'secondary,' 'constructive,' or 'derivative.' [Citations.] These formulations have been criticized as being artificial and as lacking the objective criteria desirable for predictability in the law." (*Atchison, T. & S. F. Ry. Co. v. Lan Franco* (1968) 267 Cal.App.2d 881, 886 [73 Cal.Rptr. 660] (quoted in *American Motorcycle, supra,* 20 Cal.3d at p. 594).)

Indeed, a series of recent New York decisions, arising in the wake of the *Dole* v. *Dow Chemical Company* decision relied on by this court in *American Motorcycle*, directly refutes the state's contention that an equitable indemnity action seeking partial indemnification accrues at a different point in time than a traditional equitable indemnification action. (See, e.g., *Jackson* v. *Long Island Lighting Co.* (1977) 59 App. Div.2d 523 [397 N.Y.S.2d 104, 105]; *Relyea* v. *State* (1977) 59 App. Div.2d 364 [399 N.Y.S.2d 710, 711]; *Bay Ridge Air Rights, Inc.* v. *State* (1977) 57 App.Div.2d 237 [394 N.Y.S.2d 464, 465]; *Gates-Chili Central School Dist.* v. *State* (1976) 55 App.Div.2d 44 [389 N.Y.S.2d 716, 718]. See also *United States Lines, Inc.* v. *United States, supra*, 470 F.2d 487 (action for "contribution or indemnity, in whole or in part").)

The *Gates-Chili* decision, involving a factual setting strikingly similar to the instant case, illustrates the point. In *Gates-Chili*, a person injured in a car accident sought recovery from the initial defendant. Subsequently, the defendant, pursuant to the *Dole* decision, sought partial indemnity from the state; as in the present case, the defendant's partial indemnity claim rested on the state's alleged failure properly to maintain the highway where the accident occurred. The state in *Gates-Chili* contended that the defendant's partial indemnity action was barred because a claim had not been filed within six months *of the accident* pursuant to the relevant claims statute. The New York court rejected the state's argument, declaring: "Since a claim for *Dole* contribution is essentially similar to one for indemnification, the accrual date principles in actions for indemnity should be applied . . . ." (389 N.Y.S.2d at p. 718.) Because the claim in that case had been filed within six months of the date that the defendant had settled the victim's action, the *Gates-Chili* court concluded that the indemnity action was timely filed.

In maintaining that an action for partial indemnity under *American Motorcycle*, unlike a traditional equitable indemnity action, accrues *prior* to the defendant's settlement or payment of an adverse judgment, the state apparently relies on the fact that the defendant in *American Motorcycle* was permitted to pursue his indemnity action through a cross-complaint for declaratory relief before he had sustained any actual loss. As the opinion in *American Motorcycle* makes clear, however, this aspect of the decision in no way distinguishes an action for partial indemnity from a traditional, all-or-nothing equitable indemnity action; on the contrary, *American Motorcycle* recognized the propriety

of such a declaratory cross-complaint *precisely because* such a procedure was available with respect to a traditional equitable indemnity action. (See 20 Cal.3d at pp. 604-607.)

As we explained in *American Motorcycle*, as early as 1962—16 years before our modification of the equitable indemnity doctrine in order to permit partial or comparative indemnification—our court had held in *Roylance* v. *Doelger* (1962) 57 Cal.2d 255 [19 Cal.Rptr. 7, 368 P.2d 535] that a tort defendant "could file a cross-complaint against a previously unnamed party when the defendant properly alleged that he would be entitled to indemnity from such party should the plaintiff prevail on the original complaint." (20 Cal.3d at p. 605.) Moreover, as we also pointed out in *American Motorcycle*, in 1972 the Legislature specifically codified the *Roylance* rule in section 428.10 et seq. of the Code of Civil Procedure; these statutory provisions permit a third party action to be asserted by cross-complaint by a defendant claiming "the right to recover *all or part* of any amount for which he may be held liable" on the original complaint. (Italics added.) (Code Civ. Proc., § 428.70.) It was under the authority of *Roylance* and these statutory provisions—which clearly draw no distinction between equitable indemnity actions seeking total indemnity and equitable actions seeking partial indemnity—that we concluded in *American Motorcycle* that a tort defendant may file a declaratory cross-complaint for indemnity in the original action. ■ Consequently, this aspect of the *American Motorcycle* decision does not support the state's argument that the date of accrual of an equitable indemnity action under *American Motorcycle* differs from the date of accrual of a pre-*American Motorcycle* equitable indemnity claim.[5]

Furthermore, as this court noted in *E. L. White, Inc.* v. *City of Huntington Beach, supra*, 21 Cal.3d 497, 506, the fact that a defendant is permitted under a third party procedure to bring a declaratory cross-complaint in the original tort action does not alter the general rule that, for statute of limitations purposes, the defendant's indemnity action does not accrue until he has suffered actual loss through payment. (See also *Vegetable Oil Products Co.* v. *Superior Court, supra*, 213 Cal.App.2d 252, 257.) Once again, in this respect California law conforms with the general rule throughout the United States. As the comprehensive annotation cited earlier indicates: "[I]n jurisdictions

---

[5]The case of *Gehman* v. *Superior Court* (1979) 96 Cal.App.3d 257 [158 Cal.Rptr. 62] is disapproved to the extent that it is inconsistent with this conclusion.

[like California] which by third party procedure allow a defendant in an action to bring into such action a third party defendant claimed to be liable over to him if the plaintiff recovers judgment against him, *such right to sue on a possible cause of action does not alter the rule that the statute of limitations starts to run only when the cause of action has accrued, that is, after the possibility has been resolved in favor of the third-party plaintiff.*" (Italics added; fn. omitted.) (Annot., *supra,* 57 A.L.R.3d 867, 873; and see cases discussed *id.,* at pp. 912-921.)

■ Accordingly, the governing authorities support the conclusion that the defendants' equitable indemnity actions against the state have not yet accrued for purposes of the statute of limitations. Since Government Code sections 911.2 and 901 specifically link the time for filing a claim to the accrual of the claimant's cause of action for purposes of the statute of limitations, the trial court properly determined that such actions are not barred by the expiration of the claim period.

4.  ■    *The trial court's ruling does not thwart the purposes of the California Tort Claims Act.*

Although, as we have seen, the statutory provisions of the Tort Claims Act and established principles as to the accrual of a cause of action for equitable indemnity clearly support the trial court's ruling in this case, the state argues that a contrary conclusion is nonetheless compelled to serve the "purposes" of the Tort Claims Act. The state argues in this regard that the trial court's action improperly deprives the state of the protection afforded by the act's short claims filing period and permits an injured plaintiff who has failed to file a timely claim to "indirectly" circumvent the claim statute's requirements. As we explain, neither of these arguments can withstand analysis.

First, the state's characterization of the "purpose" of the Tort Claims Act rests on a less than accurate self-serving vision of the enactment. While unquestionably the act in part aims at affording a governmental entity prompt notice of the claims against it, sections 911.2 and 901 demonstrate that the draftsmen of the act also recognized the importance of affording claimants a fair opportunity to present their claims. The act implements this latter objective by providing that the time for filing a claim does not expire before the claimant's cause of action

against the governmental entity has accrued. The state's proposed interpretation would directly thwart this legislative mandate and would improperly deprive an entire class of claimants of a fair opportunity to protect their rights vis-à-vis governmental entities.

Indeed, the state's assertion as to legislative purpose appears particularly untenable because as a practical matter the state's reading of the act would permit the injured plaintiff to forfeit a defendant's indemnity rights by simply delaying the filing of an action until after the claims period has run. As the Iowa Supreme Court stated in rejecting a similar contention as to legislative purpose: "[W]e refuse to attribute to this legislation an intention to permit an injured claimant to elect which of two equally culpable tort-feasors shall bear the *whole* burden simply because one happens to be a governmental unit...." (*Olsen* v. *Jones, supra,* 209 N.W.2d 64, 67; see, e.g., *Cotham* v. *Board of County Commissioners, supra,* 273 A.2d 115, 120-121.)

Second, it is not true that a preservation of the defendant's indemnity rights in these circumstances is simply an "indirect" way to permit an injured plaintiff to avoid the effect of the claims statute. If a plaintiff fails to file a timely claim with a governmental entity, the plaintiff's remedy will be limited to an action against the nongovernmental defendant. If the nongovernmental defendant is found not liable for the plaintiff's injuries, the plaintiff will recover nothing, even if the evidence at trial demonstrates that the governmental entity's conduct would have rendered it legally responsible for the damage. In such a case, the governmental entity will escape liability solely because of the plaintiff's failure to comply with the claims statute. Similarly, because the governmental entity's liability flows only to the indemnitee, if the indemnitee is insolvent and thereby incurs no actual financial loss, the governmental entity will likewise escape responsibility. (Cf. *Sunset-Sternau Food Co.* v. *Bonzi, supra,* 60 Cal.2d 834, 841-842.)[6]

---

[6]The issue in *Sunset-Sternau* was whether an agent, who had been held liable to a third party for an act committed in the course of an agency, could sue his principal for indemnification in a situation in which the third party's direct action against the principal was barred by the statute of frauds. The principal argued that to allow such an indemnification action by the agent would be to permit "indirectly" what the statute of frauds prohibited directly.

Our court rejected the principal's contention, observing: "To allow indemnity in this situation is not, however, to abrogate the [statute of frauds]. The section definitely curtails the third party's rights against the principal.... [T]he principal incurs no liability until the agent satisfies the third party's judgment against him. In the event of the

Moreover, in light of the traditional joint and several liability doctrine reiterated in *American Motorcycle*, when an injured plaintiff *is* successful in obtaining a judgment against the nongovernmental defendant, the state's proposed interpretation of the claims statute would not in any event prevent a plaintiff from obtaining full recovery despite his failure to comply with the claims statute. Consequently, to the extent that the state's argument relies on the theory that an injured plaintiff should not be permitted to escape the effect of its failure to file a timely claim, the theory fails; the state's interpretation would not visit its sanction upon the dilatory plaintiff at all, but would simply deprive the named tort defendant of his independent right to indemnity. (See, e.g., *Sunset-Sternau Food Co. v. Bonzi, supra*, 60 Cal.2d at p. 842.)

Accordingly, we conclude that defendants' equitable indemnity actions are not barred by the expiration of the claim filing period.

5.  ██  *Because defendants' cross-complaint was filed prior to the accrual of their cause of action for equitable indemnity, no prior claim was required.*

Although it did not raise the issue in the trial court, the state argues in its petition for an extraordinary writ that even if, as we have held, the filing period for the claim has not expired with respect to defendants' equitable indemnity actions, the trial court nonetheless erred in permitting defendants to file cross-complaints embodying these actions without first having filed claims with the state. (See Gov. Code, § 945.4.)[7]

---

agent's insolvency, the effect of the section on the principal's liability is formidable indeed. The [statute of frauds] is not nullified, then, by our interpretation; it retains its effectiveness as a curtailment of the rights of the third party and as a potential limitation of the liability of the principal." (60 Cal.2d at pp. 841-842.)

This reasoning is, of course, directly applicable to the instant case.

[7]Although the state argues that defendants should have filed claims prior to filing their cross-complaints, it does not embrace the position, suggested by the Court of Appeal, that the Tort Claims Act should be interpreted to prohibit the filing of a "declaratory" cross-complaint for equitable indemnity against a governmental entity in all cases, and to require defendants to postpone such equitable indemnity actions until the conclusion of the initial tort action.

We think that the Court of Appeal erred in its conclusion on this point. Nothing in the language or legislative history of either the Tort Claims Act or the statutory provisions authorizing third party practice in California (see Code Civ. Proc., § 428.10 et seq.) suggests that governmental entities were to be excepted from such third party

Courts in other jurisdictions which have addressed similar contentions have uniformly concluded that when a tort defendant seeks indemnity from a governmental entity pursuant to a third party procedure, and thereby institutes his action *before the indemnity claim has actually accrued*, the defendant should not be required to file a claim. (See, e.g., *Valstrey Service Corp.* v. *Board of Elections, supra*, 2 N.Y.2d 413 [161 N.Y.S.2d 52, 141 N.E.2d 565]; *Hennington* v. *Valuch, supra*, 19 Wis.2d 260 [120 N.W.2d 44, 45-46]; *Minneapolis, St. P. & S. S. M. R. Co.* v. *City of Fond du Lac* (7th Cir. 1961) 297 F.2d 583, 586; *Waldinger Co.* v. *P. & Z. Co., Inc., supra*, 414 F.Supp. 59, 60-61.)

As these cases point out, in this context application of the claim filing requirement would, to a large extent, be either meaningless or superfluous. Because the tort defendant has as yet suffered no liability, he cannot reasonably inform the governmental entity of perhaps the most crucial information contemplated by the claims provisions, namely, the amount of the claim at issue. (See Gov. Code, § 910, subds. (d), (f).) Furthermore, inasmuch as the shorter claims filing deadline is not applicable since the defendant's indemnity action has not yet accrued, the serving of a third party cross-complaint will provide the governmental entity with an equally prompt notice of the "potential claim" as would a nonjudicial notice of claim. As the court pointed out in *Waldinger Co.* v. *P. & Z. Co., Inc., supra*, 414 F.Supp. at pages 60-61: "The political subdivision has notice of the claim when it is served with a third party complaint far in advance of the time of judgment when literal application of the statute would require notice."

Accordingly, we conclude that when an equitable indemnity action is pursued prior to the accrual of the cause of action through a third party cross-complaint, no prior claim need be filed.[8]

---

practice. The Court of Appeal's proposed construction would, in our view, conflict with the tort claims act's general objective of facilitating the prompt resolution of claims against governmental entities. (See *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 294 [74 Cal.Rptr. 521, 449 P.2d 737].)

[8]Contrary to the dissent's statement (*post*, p. 768), our holding does not "exempt" an action for partial indemnity from the claims procedure. Whenever such a partial indemnity action is to be instituted against a public entity after the cause of action has accrued, the party seeking indemnity must first file a timely claim with the public entity. It is only when the indemnity claim is brought prior to accrual pursuant to a declaratory third party complaint, at a time when the statutory claim filing provision is not yet applicable, that no prior claim need be filed.

### 6. *Conclusion*

In sum, we conclude that the trial court properly overruled the state's demurrer to the Frost-Josephson cross-complaint and properly granted the Hunters leave to file a similar cross-complaint.

The alternative writ is discharged and a peremptory writ is denied.

Bird, C. J., Mosk, J., Richardson, J., and Newman, J., concurred.

**CLARK, J.**—I dissent.

When this court created a theory of partial equitable indemnity in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], it held that sound legislative policy, not traditional indemnity principles, would shape the new doctrine. In order to effect fundamental and sound legislative policies reflected in the Tort Claims Act and statutes of limitation, we should hold that the period for filing both claims and actions commences on the date of plaintiff's injury, not years after recovery of judgment.

Prior to *American Motorcycle*, an injured plaintiff could bring his action against one or more alleged contributing or concurrent tortfeasors as he chose, leaving defendant tortfeasors and their insurers no right to seek contribution by either joining additional defendants or proceeding against them in separate actions. (Code Civ. Proc., § 875 et seq.; 4 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 2346-2347.)

By leaving the plaintiff free to select his defendants, the system avoided "the controversial procedure of third party impleader and litigation of the contribution issue in the main action." (4 Witkin, Summary of Cal. Law, *supra*, p. 2346.) Additionally, the contribution statutes reflect a legislative determination that a plaintiff's interest in speedy and effective recovery takes priority over the pocketbook concerns of wrongdoers and their insurers.

In some cases, a defendant could seek indemnity from another tortfeasor *if he claims a special relationship to that tortfeasor.* Indemnity, which placed the entire loss upon one of two or more tortfeasors, differed from contribution which distributed the loss equally among them. (4 Witkin, Summary of Cal. Law, *supra*, pp. 2348-2349.)

Dissatisfied with the narrow scope of traditional indemnity and legislative policy reflected by the contribution statutes, this court in *American Motorcycle* created a new label: "partial equitable indemnity." Under it wrongdoers who previously had no recovery right were allowed to bring actions against other tortfeasors based on comparative fault; additionally, the requirement of special relationships was eliminated. By repudiating contribution in favor of a modified indemnity principle, this court allowed the pocketbook concerns of wrongdoers and their insurers to take priority over the concerns of innocent plaintiffs seeking speedy, effective relief.

Despite adoption of the new label, the court clearly indicated that traditional indemnity principles would *not* be applied to the new partial indemnity doctrine. Indeed, *American Motorcycle* itself departed from traditional indemnity principles in holding that the settlement procedures of the contribution statutes (Code Civ. Proc., § 877) are to be "preserved as an integral part of the partial indemnity doctrine." (20 Cal.3d at pp. 603-604; *Gehman* v. *Superior Court* (1979) 96 Cal. App.3d 257 [158 Cal.Rptr. 62].) Under those procedures, a tortfeasor may not recover partial indemnity from another tortfeasor who has settled. Under traditional indemnity principles, by way of contrast, an agent who settles with the plaintiff can be held liable to indemnify the principal. (Code Civ. Proc., § 875, subd. (f); *Ritter* v. *Technicolor Corp.* (1972) 27 Cal.App.3d 152, 155 [103 Cal.Rptr. 686].)

Similarly in *American Motorcycle* this court stated that in accordance with Labor Code section 3864 a concurrently negligent employer will not be liable for partial indemnity to a tortfeasor liable to an injured employee. (20 Cal.3d 578, 607, fn. 9.)

Most importantly, *American Motorcycle* held on the basis of Code of Civil Procedure section 428.10 that a defendant "is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity on a comparative fault basis." (20 Cal.3d at p. 607.) Under traditional indemnity doctrine, the defendant would be limited to seeking declaratory relief by cross-complaint—the cause of action for direct recovery does not arise until after the indemnitee has suffered actual loss through payment. (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505].)

*American Motorcycle* thus shows that we will not attempt to apply traditional indemnity doctrine to the cause of action for partial indem-

nity when to do so would significantly impair or defeat sound legislative policy.

Today the label of comparative or partial equitable indemnity is sought to be used to repudiate fundamental legislative policy. Concern for the pocketbook of the admitted wrongdoer does not justify violation of the legislative policies reflected by claims statutes and statutes of limitation. By adopting those statutes, the Legislature has shown that limitation periods are of sufficient importance to warrant barring meritorious but untimely actions by injured persons. There is no justification for elevating the pocketbook interest of a wrongdoer above that of the injured plaintiff or above that of the policy reflected by the claims and limitations statutes.

"The policy underlying the claims statutes is to afford prompt notice of claims to governmental entities. (*Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198]; *Rowan* v. *City etc. of San Francisco* (1966) 244 Cal.App.2d 308 [53 Cal.Rptr. 88].) The courts and commentators have considered prompt notice important for several reasons: To allow (1) early investigation of the facts, (2) informed fiscal planning in light of prospective liabilities, (3) settlement of claims before initiation of costly civil litigation, and (4) avoidance of similarly caused future injuries and liabilities. (2 Cal. Law Revision Com. Rep. (1959) p. A-73; *Fredrichsen* v. *City of Lakewood* (1971) 6 Cal.3d 353, 359-360. . . .)" (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 123-124 [113 Cal.Rptr. 102, 520 P.2d 726].)

It must be apparent that should a concurrent tortfeasor be permitted to delay filing claim against a public entity until he has been compelled to respond in a lawsuit, the policy underlying the claims statute will surely be frustrated. Not receiving the requisite statutory notice, the public entity has no reason to commence investigation of the facts surrounding the accident; it is unable to engage in informed fiscal planning to meet prospective liabilities—a matter of increasing importance due to recent unprecedented fiscal reforms (see *Amador Valley Joint Union High School District* v. *State Board of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281]); it has no notice of a possibly dangerous condition for months or years after the accident—in this case the state was not put on formal notice of its potential liability until nearly five years had passed—and it is not afforded opportunity to effect early settlement of claims, thus avoiding costly litigation.

Attempts to relate the commencement of the running of the 100-day period to some other event occurring later than the cause of action giving rise to a plaintiff's injuries are counter to the policy purposes of the Tort Claims Act. The public entity's liability, if any, is to be determined in its entirety by factual matters relating to the accident itself—not to procedural steps thereafter taken by an injured party in seeking redress. It is the accident which the entity must be afforded an early opportunity to investigate, and it is the dangerous condition of its property, if any, at the site of the accident which the entity must be afforded an early opportunity to correct, if the policy of the Tort Claims Act is to be served. If we were to hold that a public entity may be interpleaded without the filing of a timely claim when measured against the time of the accident, the net effect would be to permit a plaintiff to recover a proportionate share of his loss from the entity, thus permitting to be done by indirection what the statute expressly forbids.

The clear public policy embodied in the Tort Claims Act should not be frustrated and ignored in favor of a tortfeasor who traditionally could not complain because the victim of the tortious conduct elects to pursue less than all concurrent tortfeasors. Civil Code section 1714 declares "that '[e]very one is responsible...for an injury occasioned to another by his want of ordinary care or skill. . . .' A tortfeasor may not escape this responsibility simply because another act—either an 'innocent' occurrence such as an 'act of God' or other negligent conduct—may also have been a cause of the injury." (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 586.) "[A] defendant has no equitable claim vis-à-vis an injured plaintiff to be relieved of liability for damage which he has proximately caused simply because some other tortfeasor's negligence may also have caused the same harm." (*Id.,* at p. 589.)

Although this court in *American Motorcycle* modified traditional rules to provide for partial indemnity based on comparative fault among concurrent tortfeasors, it did not purport either to create a cause of action where none otherwise existed, or to modify statutory claims procedures when a public entity is one of the tortfeasors. The relief judicially announced in *American Motorcycle* was thus deemed to be permissible in that case only because it was consistent with controlling statutory provisions. (See *id.,* at pp. 599-603.) We should hold that any judicially announced rule which would allow the presentation of a cause of action for damages against a public entity absent the filing of an administrative claim against the entity within the statutorily prescribed

period is impermissibly inconsistent with the Tort Claims Act. Whether a defendant should be afforded relief in these circumstances is clearly a legislative matter. In the words of Justice Feinberg, "In sum, we can find no reason in logic or in the statute to exempt an action for partial indemnity against a public entity from the claims procedure." (*Gehman v. Superior Court, supra*, 96 Cal.App.3d 257, 263.)

Similarly the policies underlying statutes of limitation will be substantially subverted by holding that the cause of action for partial indemnity arises not upon injury but upon payment. "'Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' [Citations.]" (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755]; *Bollinger v. Nat'l Fire Ins. Co.* (1944) 25 Cal.2d 399, 406-407 [154 P.2d 399].)

Permitting deferred accrual of the indemnity action will allow tortfeasors to avoid asserting causes of action against both public and private parties until after "evidence is lost, memories have faded, and witnesses have disappeared." (*Id.*) It certainly is not unjust to require a defendant to assert his claims for partial indemnity within the statutory period after plaintiff's cause of action or injury occurs. The cross-defendants will then have the same opportunity to defend or to settle as does the defendant.

Given the substantial policies served by claims and limitation statutes, I must reject the majority's mechanical application of traditional indemnity principles. Those principles are based in part on a voluntary relationship between the tortfeasors—a relationship ordinarily absent in partial indemnity cases. As pointed out above, this court in *American Motorcycle* departed from traditional indemnity principles in three respects—settlement rules, workers' compensation and accrual of the cause of action for direct recovery—in order to give effect to legislative policy. Similarly, giving effect to legislative policy rather than labels requires that the cause of action for partial indemnity accrue for claims and statute of limitations purposes at the time of injury to plaintiff.

It is true that in a few cases, like the instant one, a defendant will not learn of the action against him until it is too late under claims and limitation statutes to proceed against another alleged tortfeasor who was not joined by plaintiff. However, this hardship should be viewed in the light of additional factors. If the plaintiff is free from negligence, the defendant is in the same position that he would have been under the contribution statutes prior to *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and *American Motorcycle.* If, on the other hand, plaintiff is contributorily negligent, he will recover less against a single defendant than he would have recovered had he prevailed against all defendants. Since plaintiff's recovery is determined by the relationship of his fault to that of all defendants, failure to join a defendant will always reduce his recovery. Defendants who are sued thus obtain a benefit from the negligent plaintiff's omission.

I would issue a peremptory writ of mandate directing respondent court (1) to vacate its orders overruling department's demurrer to Frost's cross-complaint and granting Hunter's motion for leave to cross-complain against department, (2) to sustain department's demurrer to Frost's cross-complaint, (3) to deny Hunter's motion for leave to cross-complain against department, and (4) to proceed in accordance with the views herein expressed.

Manuel, J., concurred.

Petitioner's application for a rehearing was denied May 14, 1980. Clark, J., and Manuel, J., were of the opinion that the application should be granted.