[No. A116078. First Dist., Div. Four. Aug. 25, 2008.]

ARNTZ BUILDERS, Plaintiff and Appellant, v.
CITY OF BERKELEY, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION**\***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B.

278

COUNSEL

Archer Norris, William H. Staples, W. Eric Blumhardt, Kimberly M. Amick; and John McGill for Plaintiff and Appellant.

Wulfsberg Reese Colvig & Firstman, Eric J. Firstman, Michael J. Higgins; Manuela Albuquerque, City Attorney, and Michael K. Woo, Deputy City Attorney, for Defendant and Respondent.

David L. Alexander and Christopher H. Alonzi for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**RIVERA, J.**—As a general rule, a local governmental agency is entitled to receive written notice of a claim against it for money or damages prior to the filing of a legal action. The statutes governing this notice requirement include two types of claims procedures, one statutory (Gov. Code,[1] §§ 905, 910) and one contractual (§ 930 et seq.). The question posed in this appeal is whether a claimant, having complied with a contractually mandated claims procedure, must also present a statutory claim prior to filing an action. In the published portion of this opinion, we conclude that the two procedures are intended to be parallel, not sequential; we therefore hold that if a claim is governed by a claims procedure prescribed by contract, the presentation of an additional, statutory claim pursuant to sections 905 and 910 is not required prior to filing a lawsuit unless it is expressly mandated by the contract.

In the unpublished portion of the opinion, we conclude that the public works contract entered into between Arntz Builders (Arntz) and the City of Berkeley (the City) did not require that Arntz present a section 910 claim before filing its action against the City. Accordingly, the trial court erred in entering judgment against Arntz for failure to file a statutory claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 1999, Arntz and the City entered into a contract for the restoration and expansion of the Berkeley Central Library. The original contract price for the construction work was $20,758,844, but the price was ultimately increased to $22,445,437 after a change order (Change Order No. 106). The contract, as amended by Change Order No. 106, provided that the work was to be substantially completed by June 25, 2001, with a final completion date of July 25, 2001. The City retained the Library Project Managers (LPM) as the City's project manager with authority to make decisions and take actions binding the City on matters pertaining to the contract.

Sections 930.2 and 930.4 authorize local agencies such as the City to "include in any written agreement . . . provisions governing the presentation . . . of any or all claims arising out of or related to the agreement . . ." (§ 930.2), and provide that the "claims procedure established . . . exclusively governs the claims to which it relates . . ." (§ 930.4). Pursuant to this authority, paragraph 12 of document 00700 of the contract (Paragraph 12) set forth the claims procedure for disputes arising under the contract. Paragraph

---

[1] Unless otherwise designated, all further statutory references are to the Government Code.

12 provided that if the contractor disagreed with the City's decision on a dispute concerning work to be performed, payment, time extensions or compliance with contract procedures, "the Contractor's sole and exclusive remedy is to file a claim in accordance with this Paragraph. . . ." The claims procedure warned that failure to furnish notice and file a claim within the requisite time limitations resulted in the "Contractor['s] waiving its right to the subject claim."

The claims procedure had several facets.

First, the contractor was required to provide written notice of any dispute with the City concerning any work to be performed, payment, or time extensions "[b]efore commencing the disputed Work, or within seven (7) calendar days after such demand is made or instruction is given, whichever is earlier . . . ." The City was to review this notice and provide a decision.

If the contractor disagreed with the City's decision as to the disputed work, it then had seven days to notify the project manager that a formal claim would be filed. The claim itself had to be filed within 30 days of receiving the City's decision, together with specifically enumerated documents and justifications. After reviewing the claim and supporting documents, the City would make a "final determination."

If the contractor disagreed with the final determination, and the claim was for less than $375,000, the contract provided for a meet-and-confer session and, for any unresolved matters, presentation of a Government Code claim, as set forth in paragraph 1.05 of section 01060 of the contract (Paragraph 1.05). A disputed claim that exceeded $375,000 was not subject to Paragraph 1.05. For these claims, the contract required mediation "as a condition precedent to litigation."

Finally, the contract provided that "[c]ompliance with the notice and claim submission procedures described in this Paragraph 12 is a condition precedent to the right to commence litigation, file a Government Code Claim, or commence any other legal action. No claim or issues not raised in a timely protest and timely claim submitted under this Paragraph may be asserted in any Government Code Claim, subsequent litigation, or legal action."

As disputes arose in the course of the work, Arntz did not submit claims in the format required by Paragraph 12. Instead, it took the approach of submitting requests for information (RFI) and change orders. With RFI's, the City would respond to Arntz's questions about plans, specifications or details

on the project. Change orders would result if the RFI entailed additional work beyond that called for in the contract. In Change Order No. 106, dated April 26, 2001, the parties entered into a settlement of all potential claims then pending by Arntz against the City as of February 13, 2001. Under Change Order No. 106, the contract price was increased by $805,000, the time for substantial completion was extended from December 1, 2000, to June 25, 2001, and Arntz agreed to waive any claims then pending with the exception of certain claims listed in paragraph 6 of Change Order No. 106.

Change Order No. 106 was effective April 26, 2001. Arntz subsequently continued to submit RFI's and change orders to address issues encountered in the construction process, including changes in materials to be used, costs, and scheduling. In its communications between July 2001 and May 2002, LPM continually advised Arntz that if it disagreed with an LPM determination, it was required to comply with the contract claims procedure of Paragraph 12 or it would waive its rights to pursue additional compensation.

The renovation of the library was substantially completed in March 2002. On April 19, 2002, LPM wrote to Arntz stating that Arntz had not yet complied with the contract claims procedure and reminding Arntz of its obligation under Paragraph 12. LPM further advised Arntz that the City was not waiving any of its rights under the contract as to the claims procedure.

On May 13, 2002, LPM notified Arntz that it had yet to receive "a single claim in compliance with the contract claims procedure. [¶] . . . The City . . . urges Arntz Builders to review carefully Government Code Sections 930.2 and 930.4 that apply to this procedure. The claims procedure is an exclusive remedy and Arntz Builders has and continues to waive its claims by not following it." Arntz responded by suggesting that a meeting be scheduled to address the outstanding claims because it believed that the claims procedure was "a waste of time and money . . . ." On May 29, 2002, the City informed Arntz that it would continue to insist upon the contract claims procedure to resolve any disputes. On May 31, 2002, LPM sent Arntz a detailed response to the various outstanding change orders. LPM indicated that the City did not currently owe Arntz any payment and that the City would continue to assess liquidated damages in the amount of $1,000 per day until the work on the library was complete. In the letter, LPM noted that Arntz had waived its rights to compensation on several items but that it could request permission to file a late claim pursuant to section 930.4.

On June 17, 2002, Arntz submitted a "Notice of Government Claim" with the City indicating that it and its subcontractors claimed damages resulting

from work they performed on the library restoration project. On June 27, 2002, the City rejected the claim, informing Arntz that it did not comply with the requirements of the contract claims procedure, and directing Arntz to submit a claim in the requisite format.

After reviewing this response, Arntz's counsel realized that "we had made a mistake apparently of filing this notice of Government Code Claim . . . ." Hence, on July 2, 2002, Arntz submitted a "Request for Time Extension & Compensation" and a request for mediation pursuant to Paragraph 12. The request sought costs of $9,107,590 for prime contractor and subcontractor claims. The City thereafter informed Arntz that its request did not conform to the requirements of the contract for claims, including the required claims certification. In particular, Arntz had not provided a time impact evaluation explaining why more time was needed nor had it detailed justifications for its change requests. The City reiterated "for the umpteenth time" that Arntz needed to follow the contract claims procedure.

On August 20, 2002, the City wrote to Arntz's counsel stating, again, that it did not recognize the July 2, 2002, time extension request as a claim under the contract. The City noted that it would consider "a proper Claim, compliant with the Contract if submitted on or before October 15, 2002."

By this time, counsel for Arntz had reviewed the contract and interpreted it to mean that if the claim was for more than $375,000, Arntz did not have to file a contract claim or a Government Code claim and that only mediation was required. Nevertheless, Arntz submitted a second "Request for Time Extension and Compensation" dated October 14, and a demand for mediation dated October 15, 2002 (the October claim). The documents indicated that the claim was submitted pursuant to the terms of the contract and also requested mediation. The claim sought additional payments of $9,871,754. This included subcontractor claims in excess of $4 million.

This time, the City did not object to the timeliness or form of the claim but responded on the merits, "invit[ing] dialogue" on the disputed issues. The City took the position that Arntz owed the City liquidated damages in the amount of $1,148,000 for late completion, $519,000 for failure to complete the library project punch list, $245,552 for the rental cost of substitute library facilities, and $27,500 for failure to submit daily reports. The City also noted that certain subcontractors had filed stop notices and stop-notice-related lawsuits, and that the necessary withholdings under Civil Code section 3186

for the stop notices was $2,355,215.70. Consequently, the City maintained that it was "authorized to withhold at least $5,265,293 from Arntz" which exceeded any claim by Arntz for retention and outstanding progress payments. The City expressed its desire to "promptly resolve these matters" and stated it would "correspond separately regarding proposed mediators and mediation protocol."

On November 27, 2002, the City sent Arntz a proposal for mediation that would include all subcontractors who had filed stop notices. Some of the subcontractors were opposed to mediation but the City and Arntz moved forward with selecting a mediator and setting a date for the mediation and document review. Because some of the subcontractors were resisting mediation, Arntz suggested that it might file an action against the City in order to consolidate the various actions that had been filed by the subcontractors. On April 16, 2003, Arntz informed counsel for the City that it was preparing a complaint against the City and was attempting to consolidate the subcontractor actions.

On May 1, 2003, Arntz sought clarification from the City regarding its position on Arntz's complaint and whether the City intended to pursue mediation. On May 6, 2003, the City informed Arntz that it would waive the mediation requirement in Paragraph 12 to allow Arntz to file a complaint against the City. The City's letter also stated that it was waiving only the mediation requirement "and no other notice, substantiation, or other process contained in the claims provision or otherwise in the Contract that is a condition precedent to the contractor filing suit as against the City." The letter went on to explain that the City expected to mediate the case at the end of the summer and that the waiver was for the limited purpose of "allowing Arntz to file its lawsuit and consolidate the actions."

On May 7, 2003, Arntz filed a complaint against the City for breach of contract, and against LPM for negligence. The City answered the complaint on June 23, 2003, asserting as one of its affirmative defenses that the complaint was barred because Arntz failed to comply with section 900 et seq. On September 18, 2003, the court granted Arntz's motion to consolidate the complaint with the subcontractor actions.

The mediation that had been initially scheduled for May 2003 ultimately took place on June 21, 2004, and July 16, 2004. The parties were unable to settle the matter.

In November 2004, the City filed a motion for summary judgment and in the alternative summary adjudication raising several issues including that Arntz's breach of contract cause of action was barred because Arntz did not

timely file a Government Code claim. Arntz also moved for summary adjudication, arguing that the City was estopped from asserting that it had not complied with the Government Code's claim requirements. The court denied the motions, finding that triable issues of fact existed as to Arntz's compliance with the Government Code claim requirement. The court granted the City's motion for summary adjudication on two issues, ruling that (1) Arntz's June 17, 2002, "Notice of Government Claim" was filed before a cause of action accrued and was, therefore, properly rejected by the City; and (2) the City's letter of May 6, 2003, did not constitute an express waiver of the Government Code claim requirements.

A court trial thereafter proceeded on the issue of whether Arntz complied with any applicable Government Code claim requirements. In a lengthy judgment and statement of decision, the trial court construed both the statutes and the contract to require Arntz to present a section 910 claim in addition to complying with the contractual claims procedures. The court also ruled that the October claim did not substantially comply with section 910, and was not a "claim as presented" under section 910.8 because it did not present a claim ripe for litigation nor did it threaten litigation.[2] Consequently, the court concluded that section 945.4 barred Arntz's complaint due to its failure to present a timely section 910 claim.[3] Judgment was entered and Arntz appealed.

## II. STANDARD OF REVIEW

The applicable standards of review are straightforward. The findings of the trial court as to any disputed factual issue are binding on this court, so long as they are supported by substantial evidence. (*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 108 [37 Cal.Rptr.2d 843].) Statutory construction, however, is a legal question that we determine de novo. (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 210 [89 Cal.Rptr.2d 295].) Similarly, the interpretation of contract provisions is also a legal issue subject to de novo review, unless the contract is ambiguous and its interpretation turns upon the credibility of witnesses or the resolution of factual disputes. (*City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 70–71 [56 Cal.Rptr.2d 723].) If, however, the essential facts

---

[2] A "claim as presented" is one that puts a local agency on notice that there is an accrued claim against it which, if not resolved, will result in litigation. If such a claim fails to meet all the requirements of section 910, the local agency must either inform the claimant of the technical deficiencies or waive them. (§§ 910.8, 911.)

[3] Section 945.4 provides that if a section 910 claim is required, it must be presented and rejected (either expressly or by the passage of time) before the claimant is entitled to sue the local entity.

necessary to interpret the contract are not in dispute, but give rise to conflicting inferences, we are not bound to follow the trial court's decision, and may independently draw our own inferences. (*Id.* at p. 71.)

## III. DISCUSSION

The City contends both the law and the contract require Arntz to complete two claims procedures before filing a lawsuit: (1) the claims process required by the contract, including mediation, and (2) the subsequent presentation of a claim in compliance with section 910. Arntz, on the other hand, argues that the contractual claims procedure authorized by section 930.2 supplants the claims presentation required by sections 905 and 910. Arntz contends also that the contract did not require presentation of a section 910 claim for disputed amounts over $375,000.

■ We examine, first, the language of the statutes governing the two procedures. In construing those statutes, the fundamental rule is that "a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] An equally basic rule of statutory construction is that courts are bound to give effect to statutes according to the usual and ordinary meaning of the language employed in framing them. [Citation.] Although a court may properly rely upon extrinsic aids, it should first look to the words of the statute to determine the Legislature's intent. Where the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]" (*O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 211 [54 Cal.Rptr.2d 549].)

We conclude that the legislative intent of these statutes can be ascertained from the ordinary and usual meaning of their language. We nonetheless provide, as well, a brief discussion of the legislative history as an informative context.

### A. *The Tort Claims Act*

#### 1. *The Legislative History*

In 1959, the California Law Revision Commission (the Commission) issued a report recommending an overhaul of the government claims laws and procedures. The Commission concluded "that the law of this State governing the presentation of claims against governmental entities is unduly complex, inconsistent, ambiguous and difficult to find, that it is productive of

much litigation and that it often results in the barring of just claims." (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-7 (Presentation of Claims).) The Commission, therefore, drafted for the Legislature's consideration a comprehensive and streamlined statutory scheme that would govern claims against local entities. In describing the "principal features" of the legislation, the Commission set forth, first, the "basic scheme" that "no suit may be brought against a governmental entity on a cause of action to which the statute is applicable until a written claim relating thereto has been presented to the entity and time has been allowed for action thereon by its governing body." (*Id.* at p. A-9.)

The report noted, however, that this general rule would not govern the presentation of *all* claims against *all* governmental entities. (Presentation of Claims, *supra*, at p. A-9.) For example, the Commission proposed to exclude claims against the State, because of the State's already existing comprehensive claims process. (*Id.* at pp. A-9 to A-10.) As to local public entities, the new general claims statute would apply only to claims for money or damages, and would exempt specific claims, such as those for tax exemptions and refunds, for principal and interest on bonded indebtedness, and for public employee salaries, expenses and allowances. (*Id.* at p. A-10.)[4]

The Commission also proposed the authorization of a separate procedure to govern claims arising out of contracts with local entities. Described as "[a]nother exception to the coverage of the proposed statute," it was devised to grant "authority . . . to local public entities to include special provisions in written contracts governing the presentation, consideration and payment of claims arising thereunder, thus permitting a desirable flexibility in contract situations." (Presentation of Claims, *supra*, at p. A-10.) This exception was created in recognition of the fact that claims arising out of contractual disputes may require greater or lesser notice and opportunity to investigate, depending upon the subject matter and complexity of the contract. (*Id.* at p. A-117.)

The Commission's proposed statute provided that "[t]he governing body of a local public entity may authorize the inclusion in any written agreement . . .

---

[4] It was thought that these types of claims did not so urgently require early investigation to prevent litigation and false claims, and further that the "orderly administration of the substantive policies governing the enumerated types of claims strongly suggests that claims procedure should be closely and directly integrated into such substantive policies." (Presentation of Claims, *supra*, at p. A-117.) Thus, for example, tax claims procedures should be folded into the assessment, levy and collection dates and procedures. (*Ibid.*)

of provisions governing the presentation . . . of any or all claims arising out of or related to the agreement and the consideration and payment of such claims. A claims procedure established by an agreement made pursuant to this section exclusively governs the claims to which it relates, except that the agreement may not require a shorter time for presentation of any claim than the time provided [for a statutory claim]." (Presentation of Claims, *supra*, at p. A-13.) The Commission's stated intent was to permit public entities to "waive by contract compliance with the claims statutes as to causes of action founded upon express contract . . . ." (*Id.* at p. A-117.)

■ The Commission's proposed statutory scheme was adopted, with modifications not germane to our analysis, in 1959. (Stats. 1959, ch. 1724, § 1, p. 4133.) Over the years, the statutes have been modified and amended in various ways, but the core structure remains the same. The basic requirement is that a claim against a local entity must be presented "in accordance with [section 910]" prior to the filing of a lawsuit. (§§ 905, 945.4.) Excepted from that basic requirement, inter alia, are (1) certain *types* of claims, such as tax refunds, public employee salaries and expenses, and bond payments (§§ 905, 905.1), and (2) alternative claims *procedures* provided for by contract or ordinance (§§ 930–930.6).

This structure supports the conclusion that the contractual claims procedure was intended to provide an *alternative* to, rather than an *addition* to, the statutory claim.[5] An examination of the statutes and their interplay bears out this conclusion.

### 2. *The Statutory Language*

■ Section 930.2 provides that a local public entity may include in its contracts "provisions governing the presentation . . . of any or all claims arising out of or related to the agreement and the consideration and payment of such claims." Section 930.4 provides that "[a] claims procedure established by agreement made pursuant to . . . Section 930.2 *exclusively governs* the claims to which it relates . . . ." (Italics added.) The only exception to this exclusive governance clause is that, in certain circumstances, the rules governing the presentation of *late* statutory claims must be available to contractual claimants as well. (*Ibid.*)[6]

---

[5] For ease of reference we label claims required to be presented under sections 905 and 910 as "statutory" claims, and claims procedures required by contract provisions as "contractual" claims. Technically, however, both are "statutory" claims in the sense that both are governed by different provisions of the Tort Claims Act.

[6] Section 930.4 provides: "A claims procedure established by agreement made pursuant to Section 930 or Section 930.2 exclusively governs the claims to which it relates, except that if the procedure so prescribed requires a claim to be presented within a period of less than one

■ Section 930.6 requires that claims governed by contract must conform to claims governed by statute in two ways: (1) both contractual and statutory claimants are subject to the same statute of limitations for filing an action on a claim (§ 945.6), and (2) both contractual and statutory claimants can sue only on that portion of a claim that has been rejected by the local entity and not waived by the claimant (§ 946). As explained by the Commission, "section [930.6] makes applicable to claims governed by contractual claims procedures the same . . . statute of limitations (Section 945.6) and the same general rules limiting suit on a claim . . . (Section 946) as apply to claims governed by other claims procedures." (Recommendation Relating to Sovereign Immunity, No. 8—Revisions of the Governmental Liability Act (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 417 (Revisions of Governmental Liability Act).)

■ Thus, sections 930.2, 930.4 and 930.6, taken together, enunciate the following precepts: Local agencies are authorized to include in a contract claims procedures that will *exclusively* govern the claims specified in the contract, *except* the contractual claims procedures must conform to statutory claims procedures in three—and only three—particulars: time for filing suit on a claim, limitations on the scope of a claim that can be sued upon, and access to late claim procedures in certain circumstances. These principles convey the intent to allow local agencies to develop their own claims procedures for contractual disputes as an alternative to the section 910 claims requirements. If these statutes were interpreted to require—as the City argues—that all claimants must comply with contractual procedures *and* with statutory procedures, then the conforming requirements of sections 930.4 and 930.6 would be rendered superfluous.

Further elucidation of legislative intent is found in section 945.4. That statute makes clear that the statutory claims presentation requirement found in section 905 does not apply to contractual claims. Section 945.4 provides, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 [Section 905] and Chapter 2 [Section 910] . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board . . . ." This section, by its terms, does not apply to contractual claims procedures, which are found in Chapter 5 (§ 930 et seq.). (See Recommendation Relating to Sovereign Immunity, No. 2—Claims, Actions and Judgments Against Public Entities and Public Employees (Jan. 1963) 4

---

year after the accrual of the cause of action and such claim is not presented within the required time, an application may be made to the public entity for leave to present such claim. Subdivision (b) of Section 911.4, Sections 911.6 to 912.2, inclusive, and Section 946.6 are applicable to all such claims, and the time specified in the agreement shall be deemed the 'time specified in Section 911.2' within the meaning of Sections 911.6 and 946.6."

Cal. Law Revision Com. Rep. (1963) p. 1043.) Instead, section 930.6 provides that local entities *"may* include a requirement [in the contract] that a claim be presented and acted upon as a prerequisite to suit thereon. . . ." (Italics added.) These two provisions can be harmonized only if the contractual and statutory claims procedures are understood to be parallel and not sequential.

█ In sum, both the history and the language of the Tort Claims Act lead us to conclude that the legislation was designed to authorize the imposition of a contractual claims procedure as an alternative to the statutory claims procedure. We detect no legislative intent, nor any practical need, to require presentation of a statutory claim after a claimant has complied with a local entity's contractual claims procedure.[7]

The core purposes of the claims statutes are to "give the governmental entity an opportunity to settle just claims before suit is brought[, and to] permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim." (Presentation of Claims, *supra*, at p. A-7; and see, e.g., *City of Ontario v. Superior Court* (1993) 12 Cal.App.4th 894, 902–903 [16 Cal.Rptr.2d 32] [purpose of claims presentation requirement is to provide the public entity an opportunity to investigate facts while the evidence is fresh, to settle meritorious cases without the need of litigation, and to make appropriate fiscal planning decisions].) A contractual claims procedure will amply serve those purposes because the public entity can include in the contract any reasonable requirements it deems necessary to accomplish them. From a practical standpoint, the imposition of an obligation to present a second, statutory claim would serve only to burden the claimant and protract the claims process while providing no additional benefits to the public entity.[8]

---

[7] Of course, nothing prevents a local entity from limiting the contractual claims procedure to only certain types of claims identified in the contract. The statutes provide that contractual procedures may be imposed on "any or all" claims (§ 930.2) and the contractual procedure "exclusively governs" only "the claims to which it relates . . ." (§ 930.4). Thus, under the legislative scheme, a contract can provide that certain claims are governed by the contractual procedure while other claims arising out of the same contract remain subject to the statutory procedure.

[8] At oral argument the City offered a further justification for the requirement of a separate statutory claim, viz., that of ensuring that a claim comes to the attention of the governing body of the City, citing *Westcon Construction Corp. v. County of Sacramento* (2007) 152 Cal.App.4th 183 [61 Cal.Rptr.3d 89]. There, the court rejected the plaintiff's argument that its submission of a packet of documents to a county engineer substantially complied with the Public Contract Code requirement that it submit a Government Code claim prior to filing suit. "As is often the case, the individual known to the claimant may be the very person who committed the wrongdoing that is the subject of the claim. This may be the last person who would want to pass a claim on to his or her employer. Thus, giving notice to a subordinate employee may not

The parties have not cited and we have not found any authority that speaks to this question, although some tangential support might be garnered from cases that have addressed related issues.[9] We take some comfort, however, in the fact that a respected treatise on government tort liability practice agrees with our conclusion. "Contractual claims procedures, when so adopted, are limited to claims 'arising out of or related to the agreement' (Govt C §§930, 930.2); they supersede the claims procedures of the Tort Claims Act and are the exclusive claims procedures for claims to which they apply (Govt C §930.4.)" (1 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2008) Overview of Claim Procedures, § 5.28, p. 194.)[10]

The City interprets the statutes as requiring compliance with both contractual and statutory claims procedures unless the local entity expressly " 'opt[s] out' of a Section 910 form of claim . . . clearly stating its own intent." According to the City, the provision in section 930.4 that "[a] claims procedure established by agreement . . . exclusively governs the claims to which it relates . . ." does not mean that the contractual claims procedure applies to the exclusion of all other claims procedures. Rather, the City argues, the phrase "exclusively governs" refers back to "governing" in section 930.2, "giving the claims procedure the local public entity adopts the force of law." But this construction of the statute renders meaningless the word "exclusively." If, as the City posits, the purpose of section 930.4 is not to exclude the statutory claims procedure, but only to ensure that the contractual claims procedure has legal force, then the statute would have stated that the "claims procedure governs the claims to which it relates," thus leaving open

---

assure that the public entity has an opportunity to review the claim before suit is filed." (*Westcon*, at pp. 200–201.) But *Westcon* does not discuss nor even purport to address the very different issue before this court, which is, whether a contractual claims procedure supplants the statutory claims requirement. If there is concern as to whether a contract manager might fail to disclose contractual claims to the governing body, the public entity has the power to create mechanisms to ensure that this occurs, for example, by imposing on the contract manager the obligation of disclosure at any or all steps of the contractual claims process.

[9] See *Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 644 [75 Cal.Rptr.2d 341] ("[S]ection 930.2 permits the parties to an agreement to alter the claims presentation requirements otherwise imposed by the act."); *Gehman v. Superior Court* (1979) 96 Cal.App.3d 257, 262 [158 Cal.Rptr. 62], disapproved on another ground in *People ex rel. Dept. of Transportation v. Superior Court* (1980) 26 Cal.3d 744, 759, fn. 5 [163 Cal.Rptr. 585, 608 P.2d 673] (characterizes claims under § 930.2's sister section, governing the *state's* contractual claims procedures (§ 930) as "specifically exempted" from the requirement of presenting a statutory claim).

[10] All treatises are not in agreement. (See, e.g., Acret, Cal. Construction Law Manual (6th ed. 2005) Public Contracts, § 7:100, p. 815 (Acret) ["[s]ometimes" the claims procedure in a construction contract will "amount to a claims procedure that takes the place of the claims statute"]; and see Kamine, Public Works Construction Manual (BNI 1996) p. 8 [presentation of the statutory claim is required in addition to all of the claims required under a contract.].)

the possibility that other procedures might govern as well. Instead, the statute provides for the *exclusive* governance of a contractual claims procedure to any claims to which it relates.

The City also relies on language in section 930.4 in support of its position that the code contemplates a two-step (contract claim and statutory claim) procedure. The City argues that by referencing the statutory late claims procedure, section 930.4 *must* be referring to a section 910 claim because "[t]hose [late claims] statutes . . . by their own terms apply only when a section 910 claim has been filed late. . . . Thus, a section 910 claim is compatible with a claims procedure created by agreement."

The City misreads the statute. The expressed purpose of section 930.4 is to import into the contractual claims procedure, by operation of law, the same late claims filing protections afforded to those presenting late statutory claims. (See Revisions of Governmental Liability Act, *supra*, at pp. 416–417.) This refutes City's premise that the late claims statutes govern "only when a section 910 claim has been filed late" and, therefore, provides no support for the contention that a two-step claims process is intended.

In short, nothing in the statutes supports the City's contention that presentation of a statutory claim is always required after compliance with a contractual claims procedure absent an express waiver by the local entity.

### 3. *A Contract May Include the Requirement of a Statutory Claim*

We are not prepared to conclude, however, that the law forbids a local entity from including, as part of its contractual claims procedure, a requirement that the claimant present a statutory claim as well.[11] As amici curiae have pointed out, contractual claims procedures may be designed for different purposes. A contract claims process might be devised to meet the narrow purposes of " 'giv[ing] the government or architect an opportunity to correct any problem which is going to result in extra cost and . . . protect[ing] the government from "surprise" claims after the job is over.' " Other, more comprehensive procedures, however, such as those including a notice requirement, a claims requirement, ongoing updates, and mediation of any remaining unresolved disputes, would likely be devised to fulfill all of the broader purposes intended to be served by the statutory claims procedure. As one treatise notes, public agencies are allowed to establish a different claims

---

[11] For example, the Public Contract Code provides for a hybrid claims process. (Pub. Contract Code, § 20104.2.)

procedure by contract, and "[s]ometimes the provisions of a construction contract amount to a claims procedure that takes the place of the claims statute." (Acret, *supra*, Public Contracts, § 7:100, p. 815.) What the treatise does not explain is under what circumstances it does so. The statement seems to infer a test of "relative comprehensiveness" to determine whether any given contractual claims procedure is broad enough to supplant the statutory claims requirement. But such a test would be unworkable. What appears comprehensive to one party may seem only preliminary to the other. The parties to a public works contract, or any other public contract, should be able to determine from the contract what steps are required to complete a claims process prior to filing an action. We therefore hold that, if a local entity contract includes a claims procedure, that procedure exclusively governs the claims to which it applies unless the contract *expressly* requires the presentation of a statutory claim as well.

Amici curiae contend such a rule would upset the "settled understanding of the law" that *all* actions against government entities require the filing of a statutory claim "in the absence of an express statement of intent by a public agency to establish by agreement an alternative claim presentation process under Government Code Section 930.2." The assertion that there is any "settled understanding" of the law is unsubstantiated, and is belied by the wide divergence of views found in the various treatises. (See p. 290 & fn. 10, *ante.*) In any event, we think it is only fair and equitable to require the local entity—the party who is devising and imposing the alternative claims procedure—to express its intent. It is no great burden for public entities to include, in any contract that contains a contractual claims procedure, a single sentence stating *clearly* that a statutory claim must also be presented prior to the filing of an action.

B. *The Contract Did Not Require the Presentation of a Statutory Claim for the Claims Here In Dispute*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 276.

## IV.  DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Ruvolo, P. J., and Reardon, J., concurred.