WALLACE, Senior Circuit Judge,
concurring in part and dissenting in part:
I concur with the majority’s holding that the district court erred in denying Vec-tren’s Rule 50(b) motion on the City’s waiver and notice defenses to the sale claim. However, I disagree that the Government Claims Act (Act) applies to Vec-tren’s voice and accounting claims.
The majority holds that because the claims process in Section 9 of the contract between Vectren and the City is not as detailed or comprehensive as the contractual process in Amtz, and because Section 9 contemplates that the notice requirements imposed by “other law” apply to the parties, we should not hold that the Act is supplanted by the contract. I disagree with both points.
Amtz did not actually analyze whether the parties’ contract contained a claims procedure — it simply proceeded as though that question was undisputed. Thus, Amtz did not specify what the bare minimum requirements are for a contractual claims process that would trigger that rule, nor did it state that the contract at issue there was the standard by which to judge. While certainly a claims process that was similar to Amtz would qualify, we *685 cannot use that case to reject a contractual process simply because it is dissimilar.
While Amtz did not specify standards for a sufficient contractual claims procedure, it did make clear that it would not adopt a rule that required a contractual claims process to be as comprehensive as the Act:
As one treatise notes, public agencies are allowed to establish a different claims procedure by contract, and “[sjometimes the provisions of a construction contract amount to a claims procedure that takes the place of the claims statute.” What the treatise does not explain is under what circumstances it does so. The statement seems to infer a test of “relative comprehensiveness” to determine whether any given contractual claims procedure is broad enough to supplant the statutory claims requirement. But such a test would be unworkable. What appears comprehensive to one party may seem only preliminary to the other. The parties to a public works contract, or any other public contract, should be able to determine from the contract what steps are required to complete a claims process pri- or to filing an action.
166 Cal.App.4th at 291-92, 82 Cal.Rptr.3d 605 (citation omitted) (emphasis added). Clearly then, Arntz’s focus was not so much on the breadth and depth of a contractual claims process as it was on whether the non-government party could understand its obligations based on the contract’s plain language. It follows that a contract that instructs that party to provide notice to the government prior to filing an action, whether the contractual provisions doing so are “standard” or otherwise, must clarify that the Act also applies.
The contract between Vectren and the City informed Vectren what steps were necessary prior to filing an action, including a period of notice but did not state that the Act applied. To apply the Act would therefore be contrary to Amtz.
Subsection 9.1(b) of the contract states that the City’s failure to perform any part of the contract is a default if it continues for thirty days after the City receives written notice of the failure. If an event of default occurs, Section 9.2 gives Vectren the right “at its option and without further demand or notice” to “take whatever action at law or in equity may appear necessary ... or enforce performance and observance of any obligation, agreement or covenant.” In sum, Vectren must present its claim to the City and the City has 30 days to cure. If the City does not cure, Vectren has the right to sue without giving further notice.
It is true that the contract lists several other events of default in Section 9.1 and does not impose a notice requirement on Vectren for those events. However, again, the test for whether the Act applies is not whether a contractual claims procedure is comprehensive, but whether, where a contract contains any claims process, the government party has made clear that the Act still applies. The fact that the contractual claims process here applied only to failure by the city “to observe and perform any covenant, condition or agreement” under the contract, and not to other more specific events of default (i.e. if the City files a bankruptcy petition) does not therefore have any bearing on whether the Act applies. In fact, it is in precisely this kind of situation that the Amtz rule should apply. The contract makes clear that the parties intended to have a notice requirement for some breaches and not for others — it does not make clear that the Act also applies.
Nor does the fact that the contract is structured so that an “event of default” only occurs once a breach has gone un *686 cured for thirty days mean that there is no “claim,” and therefore no claims process, until that occurs. The Act helps municipalities become aware of potential suits and gives them time to resolve disputes by other means. In the same way, the contract here requires that the City receive notice of breaches and affords a period of time in which to correct them. If no correction is forthcoming, Vectren is permitted to sue without further notice. To say that this process is not a “claims procedure” merely because the notice and response period is styled as a necessary prerequisite to an event of default, rather than something that kicks in after a “claim” appears, is both unduly narrow and contrary to the parties’ clear intent. Why would the contract give Vectren the right to sue without further notice if, in reality, Vectren was required to give a second notice and wait longer before suing?
The majority’s answer is that three words in Section 9.3 can be read to allow application of the Act, with all of its additional notice requirements, to apply. Section 9.3 of the contract states: “In order to entitle [Vectren] to exercise any remedy reserved to it in this Article IX it shall not be necessary to give any notice, other than such notice as may be required in this Article IX or by law.” The majority reasons that Act notice is “required by law,” and thus the City must not have meant to waive Act notice. But reading “or by law” this way would require additional notice any time the City triggered Section 9.1(b) by breaching “any covenant, condition or agreement” under the contract. This would, in turn, render entirely superfluous the language of 9.2 allowing Vectren to sue without any other “demand or notice,” a result we must avoid. Carson v. Mercury Ins. Co., 210 Cal.App.4th 409, 420, 148 Cal.Rptr.3d 518 (Cal.Ct.App.2012) (“‘An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable,’ ” quoting 11 Williston on Contracts (4th ed.2012) § 32:5). The more sensible reading is that the “or by law” language does not include the Act because the Act is only a requirement by law where there is not a contractual claims procedure.
Furthermore, Arntz specifically precludes holding that the “notice required ... by law” language incorporates the Act.
It is no great burden for public entities to include, in any contract that contains a contractual claims procedure, a single sentence stating clearly that a statutory claim must also be presented prior to the filing of an action.
166 Cal.App. 4h at 292. The “or by law” language, which could just as easily be read to mean general service of process as notice under the Act, is certainly not a clear statement that all of the Act claims process applies. To allow application of the Act based on such ambiguous language would be to do exactly what Arntz forbids.
I therefore respectfully dissent.